DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By:     SHEB SWETT
        EMILY DEININGER
        Assistant United States Attorneys
        One St. Andrew's Plaza
        New York, New York 10007
        (212) 637-6522 / 2472


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

             Plaintiff,

      -v.-

$122,507.00 IN UNITED STATES CURRENCY           VERIFIED CIVIL COMPLAINT
                                     FOR FORFEITURE

AND

                        22 Civ. _____

$233,286.00 IN UNITED STATES
CURRENCY,

          Defendants-*in-rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Plaintiff United States of America, by its attorney, Damian Williams, United

States Attorney for the Southern District of New York, for its verified civil complaint, alleges,

upon information and belief, as follows:

1

**JURISDICTION AND VENUE**

1.          This action is brought pursuant to Title 18, United States Code, Section 981(a)(1)(A) and Title 21, United States Code, Section 881, by the United States of America seeking the forfeiture of the following funds:

a)  $122,507 in United States currency seized on May 16, 2022 from a black Jeep; ("Seized Currency-1"); and

b)   $233,286 in United States currency seized on May 16, 2022 from 2124 North Lorel Avenue, Chicago, Illinois ("Seized Currency-2" and, together with Seized Currency-1, the "Defendants-*in-rem*").

2.          This Court has original jurisdiction over this forfeiture action pursuant to Title 28, United States Code, Sections 1345 and 1355.

3.          Venue is proper pursuant to Title 28, United States Code, Section 1355(b)(1)(A), which provides that a forfeiture action may be brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred. In this case, acts giving rise to the forfeiture occurred in the Southern District of New York.

4.          The Defendants-*in-rem* are presently held in the Seized Asset Depository Fund in the custody of the United States Marshals Service, located in the Southern District of New York.

5.          As set forth below, the Defendants-*in-rem* are subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(A) as property involved in violations of Title 18, United States Code, Sections 1956 (money laundering) and 1957 (monetary transactions involving property of specified unlawful activity), or property traceable thereto, and pursuant to

2

Title 21, United States Code, Section 881 as moneys furnished in exchange for a controlled substance, or proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate a violation of Subchapter 1 of Title 21, United States Code, Chapter 13 on Drug Abuse Prevention and Control.

## FACTUAL SUMMARY

### The Black Market Peso Exchange and the Undercover Investigation

6.        Drug trafficking organizations ("DTOs") often transfer their narcotics proceeds from the United States to the country in which the DTO operates through a shadow financial system commonly known as the Black Market Peso Exchange ("BMPE").    DTOs, after having amassed bulk United States currency, will sell that currency to money-laundering brokers at a discount, who retrieve the bulk cash in the United States and deposit it into shell accounts in the United States while paying the DTOs for the bulk cash in the currency in the DTOs' home countries.    At the same time, the money-laundering brokers will purchase bulk currency from individuals in the DTOs' home countries who wish to transfer money to the United States while circumventing the banking system.    The money-laundering brokers will pay for this currency by transferring narcotics proceeds from the U.S.-based shell accounts to accounts controlled by those individuals.

7.        Since approximately 2018, as part of an investigation of international money laundering, the DEA has used confidential sources to facilitate certain transactions through the BMPE in order to develop evidence for criminal prosecutions (the "DEA Undercover Operation"). As a result of information obtained through the DEA Undercover Operation, the DEA has arrested numerous individuals and seized approximately $72,139,414 in drug proceeds, as well

3

as approximately 232 kilograms of cocaine, 512 kilograms of methamphetamine, and 25 kilograms of heroin.

8.      During the course of the DEA Undercover Operation, the DEA identified an individual who had participated in laundering narcotics proceeds in New York City and elsewhere on behalf of money-laundering brokers located in Mexico (the "Confidential Source" or "CS"). In or about September 2019, DEA agents approached the CS, and the CS subsequently agreed to cooperate with law enforcement and continues to do so. As a general matter, when the CS is contacted by money laundering brokers to facilitate BMPE transactions ("BMPE contracts"), the CS presents that information to the DEA. The DEA accepts certain of these BMPE contracts, at which point an undercover officer communicates directly with the money laundering broker to facilitate the bulk currency pickup in the United States.

9.      The DEA has been investigating one of the money laundering brokers in contact with the CS, who has provided over ten BMPE contracts between in or about December 2019 and in or about May 2022 ("Broker-1"). For example, on or about June 25, 2020, Broker-1 contacted the CS regarding a BMPE contract to retrieve approximately $75,000 from New York City, which the DEA accepted as part of the DEA Undercover Operation. On or about July 14, 2020, in connection with that BMPE contract, another DEA confidential source retrieved approximately $75,800 from a courier near 104th Street in New York, New York.

### The May 13, 2022 Pickup

10.      In or about May 2022, the CS presented the DEA with a potential BMPE contract from Broker-1. Broker-1 was offering a pickup of approximately $100,000 in Chicago, Illinois. A DEA undercover officer (the "UC") began communicating with Broker-1 directly and

4

accepted the contract.

11.     On or about May 12, 2022, Broker-1 texted the UC to arrange the bulk-cash pickup. Broker-1 instructed the UC to go to an address in Melrose Park, Illinois ("Location-1"), at 1:00 p.m. on May 13, 2022. The UC provided Broker-1 with a dollar bill serial number ("Bill Code-1"), which is a common way for couriers to confirm their counterparties' identities in connection with bulk cash pickups.

12.     On or about May 13, 2022 at approximately 1:20 p.m., the UC arrived at Location-1. The UC texted Broker-1 to inform Broker-1 that the UC was in a black Jeep. Broker-1 replied, in sum and substance, that the courier was arriving in an Uber.

13.     At approximately 1:21 p.m., a co-conspirator ("CC-1") CC-1 approached the UC's vehicle carrying a black backpack. CC-1 entered the vehicle and told the UC, in substance and in part, that he had $200,000. The UC responded that the contract was to pick up $100,000. CC-1 stated, in substance and in part, that he had cleared it on his side and there was no problem dropping off more money. CC-1 then confirmed that the UC was in possession of Bill Code-1, after which CC-1 gave the UC the black backpack. CC-1 asked the UC to drop him off around the corner, as it would look unusual for him to exit the UC's vehicle in the parking lot.

14.     The UC drove CC-1 to [ ].   After CC-1 exited the vehicle, he entered a light blue SUV at approximately 1:27 p.m ("Vehicle-1"). Another co-conspirator ("CC-2")CC-2 was driving Vehicle-1. At approximately 2:15 p.m., Vehicle-1 parked on the street and CC-1 exited Vehicle-1 and entered a parking garage. Shortly thereafter, CC-1 exited the parking garage driving a black Jeep ("Vehicle-2"), which is registered to CC-2CC-2.

15.     Vehicle-1 and Vehicle-2 drove together a short distance and both parked on

5

the street in the same area. CC-2 exited Vehicle-1 and entered the passenger side of Vehicle-2. Vehicle-2 then left the area.

16.     The black backpack contained approximately $200,000. After receiving the backpack, the UC, along with other DEA agents, drove to a bank to have the money counted and deposited into a DEA undercover account. The money was then wired to a domestic account at the direction of Broker-1.

<u>The May 16, 2022 Seizure</u>

17.     On or about May 15, 2022, Broker-1 texted the UC to ask, in sum and substance, if the UC could retrieve bulk cash the following day. In a series of text messages, Broker-1 stated, in sum and substance, that an individual had approximately $120,000 for pickup and that it would be the same individual who dropped off the money on May 13, 2022. Broker-1 initially suggested that the pickup occur at Location-1, but then changed it to an address in Franklin Park, Illinois ("Location-2"). The UC accepted the contract and agreed to retrieve the funds on May 16, 2022 at 11:30 a.m.

18.     At approximately 11:00 a.m., Vehicle-2 pulled out of the parking garage of a building located on North Lorel Avenue, Chicago, Illinois ("Building-1"). Shortly thereafter, the DEA conducted an investigatory traffic stop of Vehicle-2. CC-2 was driving Vehicle-2 and CC-1 was in the passenger seat.

19.     A Cook County K9 dog trained to identify narcotics conducted an open-air sniff of Vehicle-2 and alerted for the presence of narcotics. The DEA then conducted a search of Vehicle-2 and identified a black duffle bag containing Seized Currency-1.

20.     CC-1 and CC-2 were then placed under arrest and transported to a police

station.

21.     Meanwhile, DEA agents at Building-1 began knocking on exterior doors to

attempt to talk to residents of Building-1. At approximately 12:00 p.m., an individual ("Individual-

1") approached the agents and stated, in sum and substance, that she rented both units of Building-

1 and that she had subleased the lower unit to two men through AirBnB for a few months.

22.     Individual-1 expressed her willingness to assist the DEA and granted verbal

consent to the DEA searching the lower unit. After Individual-1 unlocked the lower unit, DEA

agents and task force officers searched the unit. In a bedroom closet, agents recovered a black

backpack and a white plastic bag containing Seized Currency-2. They also located a money counter

and a vacuum sealer and sealer bags.

## CLAIMS FOR FORFEITURE

**Forfeiture Under 18 U.S.C. § 981**
**(Property Involved in a Transaction or Attempted Transaction in Violation of 18 U.S.C. §**
**1956 or Property Traceable to Such Property)**

23.     Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as

if fully set forth herein.

24.      By reason of the foregoing the Defendant-*in-rem* is subject to forfeiture

to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(A).

25.     Title 18, United States Code, Section 981(a)(1)(A) subjects to civil

forfeiture:

> Any property, real or personal, involved in a transaction or attempted
> transaction in violation of section 1956, 1957 or 1960 of this title, or any
> property traceable to such property.

26.      Title 18, United States Code, Section 1956(a)(1)(A)(i) and

7

1956(a)(1)(B)(i) impose a criminal penalty on any person who:

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –

> . . .

> (A)(i)  with the intent to promote the carrying on of specified unlawful activity;

> . . .

> (B)  knowing that the transaction is designed in whole or in part –

> (i)  to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]

27.     For purposes of Section 1956, "specified unlawful activity," defined in Title 18, United States Code, Section 1956(c)(7), includes, among other things, racketeering activity as defined in Title 18, United States Code, Section 1961(1). Section 1961(1), in turn, defines racketeering activity to include "felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

28.     By reason of the foregoing the Defendant-*in-rem* is subject to forfeiture to the United States pursuant to pursuant to Title 18, United States Code, Section 981(a)(1)(A) as (i) property involved in a money laundering transaction or an attempted money laundering transaction, in violation of Title 18, United States Code, Section 1956, or property traceable to such property.

**Forfeiture Under 18 U.S.C. § 981**
**(Property Involved in a Transaction or Attempted Transaction in**
**Violation of 18 U.S.C. § 1957 or Property Traceable to Such Property)**

29.     Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as if fully set forth herein.

30.     Pursuant to Title 18, United States Code, Section 981(a)(1)(A) any property, real or personal, involved in a transaction or attempted transaction in violation of Title 18, United States Code, Section 1957, or any property traceable to such property, is subject to forfeiture to the United States.

31.     Title 18, United States Code, Section 1957 imposes a criminal penalty on any person who "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." Section 1957(f)(1) defines monetary transaction to include the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds . . . ."

32.     As set forth above, pursuant to Title 18, United States Code, Sections 1956(c)(7), 1957(f)(3), and 1961(1), felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance is a specified unlawful activity for the purposes of Section 1957. *See* ¶¶ 20-24, *supra*.

33.     By reason of the foregoing the Defendant-*in-rem* is also subject to forfeiture to the United States pursuant to pursuant to Title 18, United States Code, Section 981(a)(1)(A) as (ii) property involved in a monetary transaction in criminally derived property, in violation of Title 18, United States Code, Section 1957, or property traceable to such property.

**Forfeiture Under 21 U.S.C. § 881(a)(6)**
**(Moneys Furnished in Exchange for a Controlled Substance or Proceeds Traceable to**
**Such an Exchange or Moneys Used to Facilitate Violation of the Control and Enforcement**
**Provisions of United States Code Regarding Drug Abuse Prevention and Control)**

34.    Paragraphs 1 through 22 of this Complaint are repeated and re-alleged as

if fully set forth herein.

35.    Title 21, United States Code, Section 881(a)(6) subjects to forfeiture:

> (6) All moneys, negotiable instruments, securities, or other things of value
> furnished or intended to be furnished by any person in exchange for a
> controlled substance or listed chemical in violation of this subchapter, all
> proceeds traceable to such an exchange, and all moneys, negotiable
> instruments, and securities used or intended to be used to facilitate any
> violation of this subchapter.

36.    By reason of the foregoing the Defendant-*in-rem* is subject to forfeiture to

the United States pursuant to Title 21, United States Code, Section 881(a)(6) as (i) moneys

furnished or intended to be furnished in exchange for a controlled substance or listed chemical in

violation of the Control and Enforcement provisions of Title 21 of the United States Code

regarding Drug Abuse and Prevention Control; (ii) proceeds traceable to such an exchange; and

(iii) moneys used or intended to be used to facilitate any violation of the Control and Enforcement

provisions of Title 21 of the United States Code regarding Drug Abuse and Prevention Control.

WHEREFORE, plaintiff United States of America prays that process issue to

enforce the forfeiture of the Defendants-*in-rem* and that all persons having an interest in the

Defendants-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed,

and that this Court decree forfeiture of the Defendants-*in-rem* to the United States of America for

disposition according to law, and that this Court grant plaintiff such further relief as this Court

may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
       October 28, 2022

<div style="margin-left:40%">

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
Attorney for the Plaintiff
United States of America

</div>

By:    _____
       SHEB SWETT
       EMILY DEININGER
       Assistant United States Attorneys
       One St. Andrew's Plaza
       New York, New York 10007
       Telephone: (212) 637-6522/2472

## VERIFICATION

STATE OF NEW YORK                      )
COUNTY OF NEW YORK                 :
SOUTHERN DISTRICT OF NEW YORK   )

      EDWARD MATEO, pursuant to Title 28, United States Code, Section 1746,

hereby declares under penalty of perjury that he is a Special Agent with the Drug Enforcement

Administration; that he has read the foregoing Verified Complaint and knows the contents thereof;

that the same is true to the best of his knowledge, information and belief; and that the sources of

his information and the grounds of his belief are his personal involvement in the investigation, and

conversations with and documents prepared by law enforcement officers and others.

 

 

                                               EDWARD MATEO
                                               Special Agent
                                               Drug Enforcement Administration

Executed on this
28 day of October, 2022